# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAE JEMNA,<br><br>                   Petitioner,<br><br>v.<br><br>WARDEN OF OTAY MESA DETENTION CENTER,<br><br>                   Respondent. | Case No.:  3:26-cv-00725-RBM-VET<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[Doc. 1]** |

Pending before the Court is Petitioner Nicolae Jemna's ("Petitioner") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition").  (Doc. 1.)  For the reasons set forth below, the Petition is **DENIED**.

## I.    BACKGROUND

Petitioner, a native and citizen of Romania, entered the United States on June 4, 2024.  (Doc. 6 at 2.)[1]  Petitioner "was issued a B-2 tourist visa which expired on December 3, 2024." (*Id*.; *see* Doc. 6-1 at 3; Doc. 1 at 17.)  Petitioner filed an asylum claim on October 11, 2024, and was granted employment authorization with an expiration date of January 30, 2030.  (Doc. 7 ¶ 2; Doc. 6-1 at 3.)

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

On December 12, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") while delivering a package at the Marine Corps Base Camp Pendleton. (Doc. 7 ¶ 3; *see* Doc. 6-1 at 2.) Petitioner was issued a Notice to Appear ("NTA") which charged him as deportable under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa, or "as an individual who was admitted to the United States but remained for a time longer than permitted by law." (Doc. 6 at 2; *see* Doc. 1 at 17.) The NTA also initiated removal proceedings under 8 U.S.C. § 1229a against Petitioner.

On December 19, 2025, Petitioner had a bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a). (Doc. 6 at 2; *see* Doc. 1 at 10.) At that hearing, the IJ denied Petitioner's release on bond on the merits based on a finding of "Danger & Flight Risk." (Doc. 1 at 10.) On December 26, 2025, Petitioner appealed the IJ's decision to deny bond to the Board of Immigration Appeals ("BIA"). (Doc. 1 at 13.) "The appeal is still pending." (Doc. 6 at 3.) Petitioner's removal proceedings remain ongoing, and he remains detained at the Otay Mesa Detention Center. (*Id.* at 2.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner claims he is being detained in violation of the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court's decision in *Zadvydas v. Davis,* 533 U.S. 678, 693, 695

3:26-cv-00725-RBM-VET

(2001), and the Administrative Procedure Act ("APA"). (Doc. 1 at 6–7.) Respondents seek to dismiss this matter "[b]ecause Petitioner was provided a bond hearing under 8 U.S.C. § 1226(a) and he has not exhausted his administrative remedies." (Doc. 6 at 6.)

**A.    Detention Authority**

Respondents maintain that Petitioner is detained under 8 U.S.C. § 1226(a) (Doc. 6 at 3), while Petitioner claims he "is being detained pursuant to [§] 1225(b)" (Doc. 7 at 10). As the statutory provision governing Petitioner's detention determines what procedures Respondents must follow, the Court will address this issue first.

Section 1226 governs the arrest, detention, and release of noncitizens who are detained "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). "Once [a noncitizen] has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). In *Zadvydas*, the Supreme Court construed § 1231(a)(6) to limit the time a noncitizen can be detained *after* receiving an order of removal. 533 U.S. at 682. The Ninth Circuit has extended the *Zadvydas* doctrine and "conclude[d] that § 1226(a), like § 1231(a)(6), also does not authorize indefinite detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008). In doing so, the Ninth Circuit "construe[d] the Attorney General's detention authority under § 1226(a) as limited to the 'period reasonably necessary to bring about [a noncitizen's] removal from the United States,' even if continued detention in any particular litigant's case would not pose a constitutional problem." *Id*. (quoting *Zadvydas*, 533 U.S. at 689).

In this case, Petitioner's asylum application is still pending and he has not been ordered removed. Respondents assert Petitioner is subject to detention under § 1226(a) because he was charged as removable as an individual who overstayed his visa and consequently placed in removal proceedings under 8 U.S.C. § 1229a. (Doc. 6 at 3; *see* Doc. 1 at 17.) Because a decision is pending "on whether . . . [he] is to be removed from the United States," Petitioner is detained pursuant to § 1226(a). *See Rodriguez v. Robbins*, 804 F.3d 1060, 1084-85 (9th Cir. 2015) (finding that a noncitizen "with no criminal record

3:26-cv-00725-RBM-VET

[who] entered the Untied States on a tourist visa and affirmatively applied for asylum" was subject to § 1226), *rev'd on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018)).

## B.    Prolonged Detention

While indefinite detention is also not authorized under § 1226(a), Petitioner fails to show that his detention is indefinite or unconstitutionally prolonged.  In support of his APA claim, Petitioner argues that he "faces prolonged detention for an indefinite period of time pending the final adjudication of his asylum claim, [his] pending appeal with the [BIA], and possible appeal in the 9th Circuit Court depending on BIA decision." (Doc. 7 at 14.)

However, Petitioner has been in detention for about three months and has made no showing that he is "stuck in a 'removable-but-unremovable limbo,' as the petitioners in *Zadvydas* were."  *Prieto-Romero*, 534 F.3d at 1063.  Petitioner is also not subject to an "indefinite period of time" in detention because Respondents' "authority under [§ 1226(a)] has a 'definite termination point' and ends at 'the conclusion of removal proceedings.'" *Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018)).  Although Petitioner's "detention lacks a certain end date, . . . this uncertainty alone does not render his detention *indefinite* in the sense the Supreme Court found constitutionally problematic in *Zadvydas*."  *Id*. (emphasis in original).  Ground Two of the Petition for violation of 8 U.S.C § 1231(a)(6) and prolonged detention in violation of *Zadvydas* is therefore **DENIED**.[2]

## C.    Substantive Due Process

Section 1226 affords the government significant discretion; so long as the detained noncitizen is not covered by § 1226(c)—which requires mandatory detention for noncitizens who have been charged with certain crimes—the Attorney General may release the noncitizen on "bond" or "conditional parole."  8 U.S.C. § 1226(a)(1)–(2).  Release is

---

[2]  To the extent Petitioner's APA claim is premised on his argument that he "faces prolonged detention for an indefinite period of time" (Doc. 7 at 14), Ground Three of the Petition is **DENIED** for the same reasons.

3:26-cv-00725-RBM-VET

proper where the noncitizen "satisfies [the government] that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  § 1226(a)(4).  The noncitizen has the right to contest the agency's initial custody determination, the denial or amount of bond, before an IJ.  8 C.F.R. § 1236.1(d)(1). Individuals detained under § 1226(a) are entitled to "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)).

Here, Petitioner was detained and charged as removable under INA § 237(a)(1)(B) "as a nonimmigrant [who] remained in the United States for a time longer than permitted" after his initial admission on a B-2 tourist visa.  (Doc. 6-1 at 6.)  As Petitioner is subject to detention under § 1226(a), he is entitled to a bond hearing before an IJ under the applicable regulations to challenge the agency's initial custody determination.

Petitioner argues that "ICE has violated [his] due process rights by denying him an individualized custody review to which [he] is entitled under ICE policy."  (Doc. 7 at 8, 11–12; Doc. 1 at 6.)  Yet, the record before the Court shows that Petitioner received a bond hearing before an IJ on December 19, 2025.  (*See* Doc. 1 at 11; Doc. 6 at 2.)  Although the IJ denied Petitioner's release on bond, Petitioner was not denied a bond hearing altogether.

Petitioner also argues that  he "was wrongfully refused release despite . . . demonstrating that he is neither a danger to the community nor a flight risk."  (Doc. 7 at 12.)  To the extent Petitioner contests the IJ's factual determinations, the Court lacks jurisdiction to "reweigh [the] evidence" on a challenge to an IJ's bond decision and may "only determine whether the [IJ] applied the correct legal standard."  *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (cleaned up).

Petitioner also failed to exhaust his administrative remedies.  Petitioner appealed the IJ's bond denial with the BIA but seeks habeas review ahead of his pending appeal.  "This short cut was improper."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).  A noncitizen "dissatisfied with the IJ's bond determination" must ordinarily "file an administrative appeal so that 'the necessity of detention can be reviewed by . . . the BIA.'" *Id*. (citation omitted).  "When a petitioner does not exhaust administrative remedies, a

district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id*. The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

Petitioner, however, fails to raise any grounds for excusing the exhaustion requirement. And nothing in the record shows that the administrative remedies available are inadequate or inefficient. Indeed, release on bond falls within the agency's discretionary power and its special expertise. The BIA is therefore empowered to review the IJ's determination and there is no evidence that the appeal would not proceed in a timely manner. As Petitioner's release on bond was denied based on a finding that he was a "Danger & Flight Risk" (*see* Doc. 1 at 10), there is also nothing in the record showing that Petitioner's appeal of the IJ's bond denial is necessarily futile. *Cf. Esquivel-Ipina v. LaRose*, — F. Supp. 3d —, 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025) (finding, like "other courts in this District . . . that exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory").

Accordingly, Petitioner's substantive due process claim is **<u>DISMISSED WITHOUT PREJUDICE</u>** to Petitioner filing an amended petition that follows the exhaustion of administrative remedies. *See Leonardo*, 646 F.3d at 1160.

**D.    Procedural Due Process**

Respondents argue that, as required under § 1226(a)'s procedures, an IJ "convened a bond hearing, reached a decision on the merits, and Petitioner has appealed the [IJ's] bond order." (Doc. 6 at 3.) Petitioner claims the "relief [he] is entitled to is not limited to a bond hearing." (Doc. 7 at 7.) Specifically, Petitioner claims that "Respondents detained [him] by revoking his admission" without notification, reasoning, or an opportunity to be heard in violation of the Due Process Clause. (*Id*. at 9–17.)

6

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain— lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

To determine whether the procedures afforded to Petitioner are constitutionally sufficient to satisfy the Due Process Clause, the Court considers: (1) the private interest affected, (2) "the risk of an erroneous deprivation of such interest," along with "the probable value, if any, of additional or substitute procedural safeguards," and (3) the Government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334–35.

Many courts in the Ninth Circuit, including this Court, have found that "all three *Mathews* factors support requiring a hearing before a noncitizen released from immigration detention can be re-detained, even where detention is mandatory." *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1039 (N.D. Cal. 2025). Relying on some of these courts' decisions, Petitioner contends he was entitled to notification, reasoning, and an opportunity to heard as due process in the "revocation of [his] parole." (Doc. 7 at 3; *see id*. 9–10 (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025), and *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1128 (E.D. Cal. 2025) (E.D. Cal. Oct. 3, 2025)).) However, these cases are readily distinguishable because Petitioner was neither paroled nor conditionally released into the United States. The record shows, and the parties do not dispute, that Petitioner was admitted into the United States on a B-2 tourist visa which expired on December 3, 2024.

7

3:26-cv-00725-RBM-VET

(*See* Doc. 6-1 at 3–4; Doc. 7 at 2.)  Nothing in the record indicates that Petitioner was previously detained or released from ICE detention.  As such, under the *Mathews* factors, Petitioner's case does not present the same due process concerns as those involving noncitizens' re-detention after their conditional release or parole was revoked.

Although Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.  *Cf. Juan B.P. v. Andrews*, No. 1:26-cv-01475-TLN-CSK, 2026 WL 707468, at *3 (E.D. Cal. Mar. 13, 2026) (noting the petitioner's protected liberty interest arose not from his entry on a tourist visa, but from his release from ICE custody on bond).  Unlike conditional release or parole, Petitioner's temporary initial admission into the country did not depend on or require his compliance with any similar conditions.  *Cf. Pinchi*, 792 F. Supp. 3d at 1032 ("[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release.'") (quoting *Morrissey*, 408 U.S. at 482) (cleaned up).  Nor did Petitioner's admission on a B-2 visa reflect a prior individualized danger and risk determination.  *Cf. Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

The risk of an erroneous deprivation of Petitioner's liberty interest is also not as high as in cases where noncitizens were conditionally released or paroled.  Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community.  *Zadvydas*, 533 U.S. at 690.  A noncitizen's conditional release or parole from ICE custody reflects that immigration officers necessarily determined the noncitizen was neither a flight risk nor danger to the community.  *Saravia*, 280 F. Supp. 3d at 1176.  In such cases, the risk of erroneous deprivation without a pre-detention hearing is high due to the possibility that a previously released noncitizen's re-detention will not be pursuant to a valid state interest.  *See Valencia Zapata*, 801 F. Supp. 3d at 938.  But in this case, there is no evidence that

3:26-cv-00725-RBM-VET

Respondents determined Petitioner was not a danger to the community or flight risk at any point prior to his detention on December 9, 2025. And, as previously noted, Petitioner received a bond hearing before an IJ about a week after he was initially detained. (*See* Doc. 1 at 10.) There, the IJ found Petitioner posed a "Danger & Flight Risk." (*Id.*) The risk here is therefore readily distinguishable from the risk involved when a noncitizen "has received virtually no procedural safeguards such as a bond or custody redetermination hearing." *Kaur v. United States Dep't of Homeland Sec.*, —F. Supp. 3d—, 2025 WL 3706724, at *5 (E.D. Cal. Dec. 22, 2025).

"Turning to the final *Mathews* factor, the Court notes that the government's interests in 'protecting the public from dangerous criminal' noncitizens and preventing noncitizens from fleeing are 'interests of the highest order.'" *Otilio B.F. v. Andrews*, 809 F. Supp. 3d 1038, 1055 (E.D. Cal. 2025) (quoting *Rodriguez Diaz*, 53 F.4th at 1208). "[T]hose interests are adequately protected by having a neutral decisionmaker evaluate whether a noncitizen presents those risks." *Id*. Indeed, § 1226(a) provides for such protections. "A hearing does not guarantee a noncitizen to release, it merely provides minimal procedural safeguards to ensure that detention is proper." *Morales-Flores v. Lyons*, No. 1:25-cv-01640-TLN-EFB, 2025 WL 3552841, at *6 (E.D. Cal. Dec. 11, 2025). An IJ has done so here, and Petitioner presented no grounds to question the IJ's neutrality.

On balance, the *Mathews* factors show that Petitioner is entitled to a bond hearing where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community. Because Petitioner has received a bond hearing under § 1226(a), he fails to demonstrate that his detention violates his procedural due process rights.

## IV.    CONCLUSION

Based on the foregoing reasons, the Court **ORDERS** as follows:

1. Ground One for violation of substantive due process is **DISMISSED WITHOUT PREJUDICE**. *See Leonardo*, 646 F.3d at 1160.

2. Ground One for violation of procedural due process is **DENIED WITHOUT PREJUDICE**.

3:26-cv-00725-RBM-VET

3. Ground Two for violation of the INA is **DENIED WITHOUT PREJUDICE**.

4. Ground Three for violation of the APA is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

DATE:  March 16, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:26-cv-00725-RBM-VET